This is a compensation suit in which plaintiff alleges that following an accident in which he suffered cuts and lacerations of the fingers of his right hand causing temporary disability over a period of some five weeks, during which time defendants paid compensation, and after returning to work he suffered a series of minor accidents to his hand which contributed to his alleged total and permanent disability. The so-called minor accidents consisted of abrasions and the knocking off of scabs formed by the healing of the wounds received in the first accident.
Plaintiff's claim of disability is not directly predicated upon the injuries suffered in the original accident to his fingers, nor the minor injuries sustained after his return to work. The claim is based upon the contention that plaintiff was required by his employer to wash his hands and arms with leaded gasoline in order to remove accumulations of oil and grease therefrom. It is contended that the existence of cuts and abrasions upon plaintiff's hand permitted the absorption of infection which later manifested itself in a breaking out of painful boils on plaintiff's arms, shoulders and hands; and, further, that the enforced use of gasoline as a cleansing agent irritated and weakened the resistance of plaintiff's skin to the infection, all of which is alleged to be compensable under the provisions of the Workmen's Compensation Statute.
Defendants assert that plaintiff is suffering from an occupational disease and that his disability does not result from any accident within the meaning of the compensation statute.
After trial, the Judge of the District Court, without assigning written reasons therefor, rendered judgment awarding plaintiff compensation for a period of 100 weeks, together with the sum of $500 for medical and hospital expenses. Both plaintiff and defendant are dissatisfied with this judgment, and both have appealed therefrom. Defendant contends that the plaintiff is not entitled to any award whatever, while plaintiff strenuously argues both orally and in brief that the plaintiff is entitled to an award during the period of his disability not exceeding four hundred weeks.
With reference to the award for medical and hospital expenses, careful examination of the record fails to disclose any evidence which would justify such an allowance. Indeed, the only attempt to establish this claim was made in cross-examination of one of defendant's medical witnesses. After the witness in question had testified that he could not make an estimate of the cost of treatment, counsel for plaintiff attempted to establish the estimate of $500, but the witness testified that the treatment could be administered for less than that sum. The Courts of Louisiana have held many times that recovery of medical expenses will be allowed only to the extent of amounts actually expended, or for amounts, the payment of which has been actually assumed. It may be that this rule would be relaxed with regard to an exceptional case, but we do not find the facts of the instant case indicative of a need for such relaxation, since there is no testimony that the plaintiff ever contemplated, much less obligated, himself, to undergo any future medical treatment. It follows that the claim for this item should be rejected.
The disability from which plaintiff claimed to suffer, as described by the expert medical witnesses, is described as being "oil acne", an inflammatory disease of the sebaceous glands producing an irritation of the hair follicles, which inflammation and resulting irritation is engendered by contact with oil and grease.
We think the points at issue in the instant case may be resolved by a determination as to whether or not plaintiff's use of leaded gasoline in washing his hands and arms was the proximate cause of the disease from which he suffered, and whether or not the same can be classified as an accident within the contemplation of the compensation statute.
It is established that plaintiff had followed his occupation as an automobile mechanic for some seven or eight years prior to the occurrence of the incidents which precipitated this suit. It is not shown that at any time within this period *Page 648 
plaintiff suffered from the disease of which he now complains, but it is shown that, since the termination of his employment by defendant, in performing work in line with his occupation, for another employer and for himself upon his own car, plaintiff has suffered the same skin eruption, notwithstanding the fact that he did not use gasoline for washing purposes after leaving defendant's employ.
[1, 2] The case of Glover v. Fidelity Casualty Co., La. App., 10 So.2d 255, 257, contains in the opinion of judge Drew, who was the organ of this Court, what we regard as a clear definition of the term "occupational disease", and counsel for both plaintiff and defendant in the instant case have cited extracts from the opinion in the Glover case. The definition and the elaborations thereupon, which we feel to be particularly pertinent to the case before us, read as follows:
"Occupational disease has been defined as one wherein the cumulative effect of the employee's continued absorption of deleterious substances from his environment ultimately results in manifest pathology. In occupational disease any one exposure is inconsequential in itself, but the continued absorption is the factor which brings on the disease. It has also been defined as happening drop by drop, little by little, day after day, for weeks and months, and finally enough is accumulated to produce symptoms. It has its inception in the occupation and develops over a long period of time from the nature of the occupation.
* * * * * *
"To connect a disease with the occupation or trade of an employee, it must be that the exposure that brings about the disease is generally and usually present whenever and wherever he is following his occupation or trade and cannot be so considered when the exposure which might cause the disease is for a limited time on a job under conditions which are unusual for one engaged in his occupation or trade and when brought about by an emergency."
It is established by the testimony of all the medical experts who appeared as witnesses in the instant case that the primary cause of plaintiff's disease was an infection resulting from the dirt, oil and grime which impregnated his clothing, or which was accumulated on his skin in the course of his work. It is true that the expert skin specialist who testified on behalf of plaintiff expressed the opinion that the washing with gasoline irritated the skin and made it more subject to infection. This witness also testified that cuts and abrasions on the hands might have provided an opportunity for the carrying of the infection, but plaintiff himself testified that minor abrasions, skinned places on the hands, were matters of common and expected occurrence in his trade.
Conceding, arguendo, that the gasoline irritated plaintiff's skin, there is no showing that he was forced to use gasoline for washing and cleansing purposes, nor is there any testimony to the effect that he objected to the use of this cleansing agent, nor that he requested his employer to furnish any other cleansing agent. In fact, plaintiff testified that after leaving his employment with defendants, he worked for a man named Logan; that he used soap and water for washing, and that he broke out with the same disease, acne, from which he had suffered while in defendant's employ.
All of this clearly indicates to us that the disease from which plaintiff suffered meets every condition and requirement of the definition of an occupational disease. The manifestation of the disease did not occur after a few days employment, but after several weeks during which he had been in the employ of the defendant, and several years after he had embarked upon and continuously followed his trade as automobile mechanic. The irritation, if it is conceded that the gasoline caused such irritation, apparently was not a contributing factor, in view of the fact that plaintiff suffered from the same disease when using soap and water as a cleansing agent.
The testimony of the medical experts is in substantial agreement with regard to the cause of oil acne, and each of the two specialists who appeared as witnesses, one on behalf of plaintiff and one on behalf of defendant, testified that oil acne is considered an occupational disease. *Page 649 
[3] Under the facts established by the evidence we can only conclude that plaintiff contracted an occupational disease brought on by years of exposure to oil impregnated dirt and grime, which eventually resulted in irritation of the hair follicles exposed to contamination from this source.
We are strengthened in our conclusion by consideration of the statutory definition of the terms "accident" and "injuries", which reads as follows: "The word 'Accident,' as used in this act, shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted." Act No. 20 of 1914, § 38, as amended by Act No. 38 of 1918; Dart's Statute, § 4427.
Plaintiff has failed to connect the accident causing lacerations to his hand, for which he was compensated, which accident conforms to the definition given above, with the disease which he claims as the cause of his alleged disability. Further, plaintiff has failed to establish by a preponderance of the evidence that the disease or infection from which he suffered was the natural result of an injury by violence to the physical structure of the body.
It is quite possible that plaintiff might have sustained a claim in damages against his employer, based on a tort action, on the ground that the employer's negligence in failing to provide proper and harmless cleansing agents, and the employer's insistence, if such could have been established, on the use of leaded gasoline by employees, was the proximate cause of disability. But, certainly, under our conception and understanding of the purpose and intent of the provisions of the compensation statute, plaintiff has failed to establish his claims.
For the reasons assigned, the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendants, rejecting plaintiff's demands, together with all costs.